IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RESTAURANT GROUP
MANAGEMENT, LLC, et al.,

    Plaintiffs,

    v.

ZURICH AMERICAN INSURANCE
COMPANY,

    Defendant.

CIVIL ACTION FILE
NO. 1:20-CV-4782-TWT

## OPINION AND ORDER

This is a breach of contract action. It is before the Court on the Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. 9]. For the reasons set forth below, the Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. 9] is GRANTED.

### I.    Background

The Plaintiff Restaurant Group Management, LLC ("RGM") provides management and administrative services to restaurants. (Compl. ¶ 2.) RGM is a named insured on a commercial property policy, Policy No. CPP-0386154-02 ("the Policy"), issued by the Defendant, Zurich American Insurance Company ("Zurich"). (*Id.* ¶ 1.) The Policy was in effect between December 31, 2019 and December 31, 2020 and included a number of restaurants listed as scheduled

locations. (*Id.* at 35, 38–41.) RGM and these restaurants[1] (collectively, "the Plaintiffs") bring this action against the Defendant as a result of its denial of insurance coverage for business closures resulting from the COVID-19 pandemic. (*Id.* ¶ 17.)

### A. The Policy

Because the Plaintiffs claim coverage under various provisions, a thorough overview of the Policy is in order. As relevant to this action, there are four coverage forms containing various provisions outlining different forms of insurance coverage—the Real and Personal Property Coverage Form ("RPPCF"), the Additional Coverages Form ("ACF"), the Business Income Coverage Form ("BICF"), and the Extra Expense Coverage Form ("EECF"). Each coverage form is described in detail below.

#### 1. Real and Personal Property Coverage Form

In its RPPCF, the Policy states that the Defendant "will pay for direct physical loss of or damage to 'real property' and 'personal property' at a 'premises' directly caused by a 'covered cause of loss'." (*Id.* at 100.) Each of the terms in quotations is defined by the Policy, and a "covered cause of loss" is "a

---

[1] The Plaintiff Restaurants are: Atlanta's Best Patio, LLC d/b/a Einstein's; Eat at Joe's LLC d/b/a Joe's on Juniper; Northlake Roxx, LLC d/b/a Hudson Grille Tucker; Restaurant 104, LLC d/b/a Hudson Grille Sandy Springs; Restaurant 101, LLC d/b/a Hudson Grille Midtown; Great Sports, LLC d/b/a Hudson Grille Kennesaw; North Point Sports, LLC d/b/a Hudson Grille North Point; Restaurant 105, LLC d/b/a Hudson Grille Downtown; America's Best Bakery, LLC d/b/a Metrotainment Bakery; America's Best Bakery, LLC d/b/a Sugar Shack. (Compl. ¶¶ 3–12.)

fortuitous cause or event, not otherwise excluded, which actually occurs during this policy period." (*Id.* at 82.) The phrase "direct physical loss of or damage to" is not defined by the Policy. The Policy excludes numerous causes of loss from coverage under the RPPCF, including "Microorganisms," which the Policy defines as "any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, 'fungus', wet or dry rot, virus, or bacteria, or any by-product." (*Id.* at 87.) Under this Microorganism exclusion, the Policy states:

> We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of "microorganisms", unless resulting from fire or lightning. Such loss or damage is excluded regardless of any other cause or event, including a "mistake", "malfunction", or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.
>
> But if a result of one of these excluded causes of loss is a "specified cause of loss", other than fire or lightning, we will pay that portion of the loss or damage which was solely caused by that "specified cause of loss".
>
> We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "microorganisms".

(*Id.* at 102.)

### 2. The Additional Coverages Form

The ACF coverages complement coverages listed in other parts of the Policy. (*Id.* at 109.) One such coverage is "Consequential Loss—Undamaged Stock," under which the Defendant "will pay for the consequential loss in value

of undamaged 'stock' which has become unmarketable as a complete product because of direct physical loss of or damage to other 'stock' directly caused by a 'covered caused of loss'." (*Id.* at 110.) And although microorganisms constitute an excluded cause of loss under the RPPCF, the ACF states that the Defendant will pay for "[d]irect physical loss of or damage to Covered Property caused by 'microorganisms', including the cost of removal of the 'microorganisms'[,]" as long as the microorganisms themselves result from a covered cause of loss. (*Id.* at 114.)

### 3. The Business Income Coverage Form

The BICF states:

> We will pay for the actual loss of "business income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at a "premises" at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a "covered cause of loss". We will not pay more than the applicable Limit of Insurance shown on the Declarations for Business Income at that "premises".

(*Id.* at 151.) The BICF provides for various additional business income coverages. (*Id.*) As relevant here, these additional coverages include Civil Authority, Expense to Reduce Loss, Extended Period of Indemnity, Ingress/Egress, and Microorganisms coverages. (*Id.* at 151–53.) Three of these coverage provisions—Civil Authority, Ingress/Egress, and Microorganism—explicitly include the phrase "direct physical loss of or damage to" as a requirement for coverage. The Civil Authority provision states:

> We will pay for the actual loss of "business income" you sustain for up to the number of days shown on the Declarations for Civil Authority resulting from the necessary "suspension", or delay in the start, of your "operations" if the "suspension" or delay is caused by order of civil authority that prohibits access to the "premises" or "reported unscheduled premises". That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the "premises" or "reported unscheduled premises" which sustains a "business income" loss. The loss or damage must be directly caused by a "covered cause of loss".

(*Id.*) The Ingress/Egress provision covers lost business income when a covered property is "physically obstructed due to direct physical loss or damage." (*Id.* at 152.) The Microorganisms provision in the BICF covers "the actual loss of 'business income'" sustained as a result of a "[n]ecessary 'suspension' of your 'operations' from direct physical loss of or damage to Covered Property caused by 'microorganisms' when the 'microorganisms' are the result of a 'covered cause of loss'." (*Id.* at 152.)

One of the other two relevant provisions under the BICF—the Extended Period of Indemnity provision—implicitly includes the phrase "direct physical loss of or damage to" as a requirement. (*Id.*) The Extended Period of Indemnity Provision states:

> If the necessary "suspension" of your "operations" produces a "business income" loss payable under this Coverage Form, and you resume "operations" with reasonable speed, we will pay for the actual loss of "business income" you sustain during the "extended period of indemnity."

(*Id.*) The "extended period of indemnity" is defined by the Policy as the period of time between the end of the "period of restoration" and the earlier of:

5

> (a) The date your gross sales, including rental income, are restored to the amount that would have existed if no direct physical loss or damaged occurred; or
> (b) The date calculated by adding the number of days shown on the Declarations for Extended Period of Indemnity—Business Income to the date the "period of restoration" ended.

(*Id.* at 84.) The "period of restoration" has an extended definition under the Policy. (*Id.* at 90.) As relevant here, the "period of restoration" begins when "[t]he direct physical loss or damage that causes 'suspension' of [the insureds'] 'operations' occurs," and ends under various scenarios where operations are or could have been restored. (*Id.*) Therefore, the definition of "Extended Period of Indemnity" implies reliance on some "direct physical loss of or damage to" the covered premises.

The BICF's remaining relevant provision, the Expense to Reduce loss provision, does not include any reference to a "direct physical loss of or damage to" requirement. This provision covers "reasonable and necessary expenses [the Plaintiffs] incur, except the cost of extinguishing a fire, to reduce the amount of loss of 'business income'." (*Id.* at 152)

### 4. The Extra Expense Coverage Form

The EECF covers "the actual and necessary 'extra expense' [the Plaintiffs] incur due to direct physical loss of or damage to property at a 'premises' . . . ." (*Id.* at 160.) The Policy defines "extra expense" as expenses incurred "during the 'period of restoration' that would not have been necessary to incur if there had been no direct physical loss or damage to the

property . . . ." (*Id.* at 85.) The EECF also contains Civil Authority and Ingress/Egress provisions substantially similar to those in the BICF, except covering extra expenses relating to those covered events instead of lost business income. (*Id.* at 160.)

### B. Relevant Factual Background

The facts surrounding the COVID-19 pandemic are painfully familiar to all Americans. As the virus took hold in the United States in March 2020, the Plaintiffs closed their locations for "periods of at least thirty days" in light of government orders and public health concerns. (*Id.* ¶ 40.) On April 2, 2020, Georgia Governor Brian Kemp issued a "Shelter in Place" Order, which the Plaintiffs allege "officially shut down [their] businesses" and prevented them from testing their premises for the presence of COVID-19. (*Id.* ¶¶ 43, 45.) On May 12, Governor Kemp issued another executive order which loosened restrictions on restaurant operations but required capacity limits, social distancing, and sanitation practices. (*Id.* ¶ 50.) Upon reopening, the Plaintiffs were required to make "physical alterations to various premises[,] including removal of tables and chairs to achieve customer and staff distancing." (*Id.* ¶ 40.) The Plaintiffs gave notice of their claims to the Defendant in March, claiming "loss of stock, suspension of operations, spoilage of food, limitations on ingress and egress, civil authority[-]ordered closings, limitations on operations and loss of business income occasioned by the virus." (*Id.* ¶ 51.) The Defendant subsequently denied the Plaintiffs' claims, and this suit followed.

(*Id.*)

## II. Legal Standards

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III. Discussion

In its Motion to Dismiss, the Defendant makes two broad arguments.

8

First, the Defendant claims that the Policy's microorganism exclusion precludes coverage of losses caused by COVID-19. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 10–17.) Second, the Defendant argues that the Plaintiffs have failed to allege sufficient facts to show the Policy covers the Plaintiffs' losses here. (*Id.* at 17–24.) In the Defendant's view, the Plaintiffs have not shown a "direct physical loss of or damage to" a covered property, the "baseline requirement for all of the implicated coverages." (*Id.* at 17.) In response, the Plaintiffs point to a footnote in this Court's decision in *Henry's Louisiana Grill v. Allied Ins. Co. of America*, Civ. A. No. 1:20-CV-2939, 2020 WL 5938755, at *9 n.1 (N.D. Ga. Oct. 6, 2020), which they allege establishes the principle that pleading the physical presence of COVID-19 requires the denial of the Defendant's motion. (Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 12–13.) Further, the Plaintiffs argue that Georgia law renders the Policy's microorganism exclusion illusory and that they have sufficiently pleaded both "direct physical loss of or damage to" the covered premises. (Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 18–25.)

There is no dispute that Georgia law applies to this diversity action. "In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 722 S.E.2d 923, 925–26 (Ga. Ct. App. 2012) (punctuation omitted). Construction of the policy's terms are questions of law:

> The court undertakes a three-step process in the construction of

9

>the contract, the first of which is to determine if the instrument's language is clear and unambiguous. If the language is unambiguous, the court simply enforces the contract according to its terms, and looks to the contract alone for the meaning.

*American Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*, 707 S.E.2d 369, 371 (Ga. 2011) (internal citations omitted). Unambiguous terms must be given effect "even if beneficial to the insurer and detrimental to the insured," and Georgia courts "will not strain to extend coverage where none was contracted or intended." *Jefferson Ins. Co. of New York v. Dunn*, 496 S.E.2d 696, 699 (Ga. 1998). By Georgia statute, "the whole contract should be looked to in arriving at the construction of any part." O.C.G.A. § 13-2-2.

Before determining whether any potential exclusions apply, the Court must evaluate whether the Plaintiffs have sufficiently pleaded facts that trigger the Policy's coverage. The Defendant argues that all of the relevant coverage provisions require "direct physical loss of or damage to" a covered property. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 17 (internal quotation marks omitted).) The Plaintiffs do not contest this characterization, but instead argue that their "Complaint is replete with multiple paragraphs alleging 'direct physical loss of or damage to' property at each premises." (Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 18.) As a threshold matter, the Court must determine whether the Defendant's characterization of the "direct physical loss of or damage to" requirement as universal is correct. This showing is clearly a requirement for many of the relevant coverage provisions: the

RPPCF; the ACF's Undamaged Stock and Microorganisms provisions; the BICF's Civil Authority, Ingress/Egress, and Microorganisms provisions; and EECF's Civil Authority and Ingress/Egress provisions. The Civil Authority provisions require a showing of "direct physical loss of or damage to property located within one mile from the 'premises'." (Compl. at 151.) Further, "direct physical loss or damage" is required by the terms that define the BICF's Extended Period of Indemnity provision. (*Id.* at 84.) The sole remaining provision, the BICF's Expense to Reduce Loss provision, does not rely on such a showing. Therefore, if the Plaintiffs fail to allege "direct physical loss of or damage to" their properties or nearby properties as a result of the virus, coverage under all but one of the relevant provisions will be precluded. The Court will thus begin its analysis by determining whether the Plaintiffs have sufficiently pleaded a "direct physical loss of or damage to" the relevant properties.

The Complaint notes that each "restaurant has had 'direct physical loss' of seating capacity and tables and chairs, as well as property contamination due to the virus." (Compl. ¶ 60.) The Plaintiffs also allege that the Shelter in Place Order prevented testing of their premises for the presence of COVID-19 but that "[i]mplicit in the guidance and directives of [public health] authorities is the assumption that the virus is present in virtually all workplaces and other

commercial spaces . . . ." (*Id.* ¶¶ 45, 82.)[2] For the purposes of the Civil Authority provisions, this assumption extends to restaurants located within a mile of the covered properties that similarly ceased operations as a result of the virus. (Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 22.) Accepting this assumption as true, the Plaintiffs argue that a footnote in this Court's decision in *Henry's Louisiana Grill* demonstrates why this allegation is sufficient to survive a motion to dismiss. In that case, the plaintiffs relied on decisions from a Missouri district court that had denied motions to dismiss because of sufficiently pleaded allegations that COVID-19 was present on the relevant premises. 2020 WL 5938755, at *6 n.1. But the *Henry's Louisiana Grill* plaintiffs explicitly alleged that COVID-19 had never been found on the premises, and the footnote noted this distinction. *Id.* The Plaintiffs here argue that this footnote establishes a principle that this Court will let these claims

---

[2] As the following analysis will show, the result of this case does not depend on whether COVID-19 was present on the covered properties or not. However, the Court notes that in cases where the sufficiency of such a pleading would impact the case, it is not clear this "assumption" would support a legally sufficient allegation. Without testing of the premises or confirmed transmission on-site, this Court has deemed such assumptions "conjecture and speculation," insufficient to withstand a motion to dismiss. *Johnson v. Hartford Fin. Svcs. Grp., Inc.*, Civ. A. No. 1:20-CV-2000, 2021 WL 37573, at *5 (N.D. Ga. Jan. 4, 2021); see also *Karmel Davis & Assocs., Attorneys-at-Law, LLC v. Hartford Fin. Svcs. Grp., Inc.*, Civ. A. No. 1:20-CV-2181, 2021 WL 420372, at *4 (N.D. Ga. Jan. 26, 2021) ("Plaintiff assumes that the virus was 'likely' physically present, without providing any proof that employees or other people on the property were infected at the time. Thus, without more, these are mere blanket allegations and are too generalized to support the conclusion that COVID-19 caused physical damage to Plaintiff's property." (internal citations omitted)).

proceed to discovery as long as the allegations make clear that COVID-19 entered the premises. This argument misunderstands the footnote, which means only what it says: the cases cited by the *Henry's Louisiana Grill* plaintiffs for support were distinguishable enough to provide none. This footnote did not announce a Golden Ticket for plaintiffs seeking to advance to discovery in these cases by merely pleading the presence of COVID-19. The burden on the Plaintiffs remains the same: they must allege "direct physical loss of or damage to" the covered premises "caused by a covered cause of loss."

Regardless of whether the Court accepts the Plaintiffs' allegations of the virus' presence as true, the Plaintiffs have failed to satisfy their burden. As the Court has noted, though "some courts have found physical loss even without tangible destruction, the line of cases requiring tangible injury to property is more persuasive." *K D Unlimited Inc. v. Owners Ins. Co.*, Civ. A. No. 1:20-CV-2163, 2021 WL 81660, at *4 (N.D. Ga. Jan. 5, 2021); *see also Johnson v. Hartford Fin. Svcs. Grp., Inc.*, Civ. A. No. 1:20-CV-2000, 2021 WL 37573, at *5 (N.D. Ga. Jan. 4, 2021) ("[A]bsent from the Amended Complaint are any allegations that Plaintiffs' offices have sustained any modicum of physical damage that renders them unsatisfactory in any way."); *Karmel Davis & Assocs., Attorneys-at-Law, LLC v. Hartford Fin. Svcs. Grp., Inc.*, Civ. A. No. 1:20-CV-2181, 2021 WL 420372, at *4 (N.D. Ga. Jan. 26, 2021) (holding that allegations of COVID-19's likely presence, "without more, . . . are mere blanket allegations and are too generalized to support the conclusion that COVID-19

13

caused physical damage to Plaintiff's property"). The Plaintiffs identify two alleged "direct physical loss[es]" that trigger coverage under the Policy: the reduction in seating capacity and "property contamination due to the virus." (Compl. ¶ 60.) Neither of these claimed losses trigger coverage under Georgia law. First, the Plaintiffs' argument that social distancing requirements led to a change in table arrangements and a reduction in capacity does not demonstrate a *direct* physical loss of their properties.[3] In Georgia, "direct" means "without intervening persons, conditions, or agencies; immediate." *AFLAC, Inc. v. Chubb & Sons, Inc.*, 581 S.E.2d 306, 308 (Ga. Ct. App. 2003). Here, the arrival of COVID-19 did not have a direct effect on the premises, as any changes to the layout or reduction in capacity represents an "intervening" action, taken by the Plaintiffs in response to the perceived or actual threat of contagion. Second, the alleged "property contamination due to the virus" does not alone indicate a "direct physical loss of or damage to" the covered premises. The phrases "loss of" and "damage to" "make it clear that coverage is predicated upon a change in the insured property resulting from an external event

---

[3] In their response brief, the Plaintiffs appear to ask the Court to certify a question to the Supreme Court of Georgia regarding the proper interpretation of this phrase. (*See* Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 21–22.) The Court has rejected similar requests before. *See Henry's Louisiana Grill*, 2020 WL 5938755, at *7. But regardless of the merits, a motion to certify a question must comply with the Court's Local Rules. *See* N.D. Ga. Local R. 7.1(A)(1) ("Every motion . . . shall be accompanied by a memorandum of law which cites supporting authority."). A passing suggestion made within a response brief without reference to supporting authority will not be considered.

rendering the insured property, initially in a satisfactory condition, unsatisfactory." *Id.* The change must be "actual," and the Plaintiffs' contamination allegations do not indicate an actual physical change occurred on the premises as the result of COVID-19. *See K D Unlimited, Inc.*, 2021 WL 81660, at *5 (holding that "the presence of COVID-19 particles on the Plaintiffs' property, without more," does not constitute "direct physical loss or damage to" to the property); *Johnson*, 2021 WL 37573, at *5 (holding that the presence of COVID-19 does not support allegations that the covered properties "sustained any modicum of physical damage that renders them unsatisfactory in any way"); *cf. Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020) (holding, in a non-pandemic context and applying Florida law, that "'[d]irect' and 'physical' modify loss and impose the requirement that the damage be actual"). And just as the Plaintiffs fail to allege such loss or damage at the covered premises, they also fail to allege that the virus caused the requisite loss of or damage to nearby properties as required by the Civil Authority provisions.

Thus, the Plaintiffs do not sufficiently allege any "direct physical loss of or damage to" the relevant premises, and as a result they have pleaded no facts that indicate coverage under all of the Policy provisions that rely upon such a showing. As noted above, these provisions are: the RPPCF; the ACF's Undamaged Stock and Microorganisms provisions; the BICF's Civil Authority, Extended Period of Indemnity, Ingress/Egress, and Microorganisms

provisions; and EECF's Civil Authority and Ingress/Egress provisions. Because the Plaintiffs' failure to allege a "direct physical loss of or damage to" their properties result from a legal deficiency rather than a factual one, the Plaintiffs' claims under these provisions are dismissed with prejudice.

This decision leaves a single Policy provision for the Court to analyze: the BICF's Expense to Reduce Loss provision. (Compl. at 152.) This provision appears relatively broad, covering "reasonable and necessary expenses [the Plaintiffs] incur, except the cost of extinguishing a fire, to reduce the amount of loss of 'business income'." (*Id.*) Unlike other provisions in the BICF, the Expense to Reduce Loss provision does not include a reference to a requirement of "direct physical loss of or damage to" the properties. Instead, the provision appears to cover expenses made to reduce potential losses of business income, as the Defendant will only "pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this Coverage Form . . . ." (*Id.*) The Defendant argues in a footnote that coverage under this provision is "dependent on a viable claim for Business Income . . . coverage," and the Plaintiffs fail to substantively address this provision in their response brief. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 21 n.16.) The Defendant's characterization makes intuitive sense: the Policy only covers those costs incurred to mitigate a potential claim under the BICF, and the Policy will not cover an amount greater than that potential loss. However, the drafting of the provision creates broader coverage than that

16

suggested by the Defendant. The "Extended Period of Indemnity Provision," immediately following the "Expense to Reduce Loss" provision, requires "a 'business income' loss payable under this Coverage Form" to trigger coverage. (Compl. at 152.) The fact that the "Expense to Reduce Loss" provision does not include this phrase, but rather the more general "amount of loss of 'business income,'" indicates that coverage under the provision does not depend on a viable business income claim.

However, regardless of whether a viable business income claim is required to support coverage under the "Expense to Reduce Loss" provision, the Plaintiffs have failed to plead sufficient facts that coverage was triggered here. The Plaintiffs' Complaint does not identify what expenses they incurred to reduce the amount of lost business income. Without any allegations detailing the expenses incurred for the purpose of reducing lost business income, the Plaintiffs cannot allege coverage under the provision. Unlike its analysis above, the Court finds this deficiency to be factual rather than legal, and thus the Plaintiffs' claims for coverage under the "Expense to Reduce Loss" provision are dismissed without prejudice.

The Plaintiffs' failure to plead sufficient facts regarding coverage of their claimed losses has two important effects. First, without allegations tending to show coverage, the Court has no occasion to assess whether the Microorganism exclusion precludes coverage of these losses. Second, without sufficiently pleaded covered losses, the Plaintiffs' declaratory judgment, breach of contract,

17

and bad faith claims all fail. *See, e.g.*, O.C.G.A. § 33-4-6 (requiring "a loss which is covered by a policy of insurance" for a bad faith claim).

### IV.   Conclusion

For the reasons set forth above, the Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. 9] is GRANTED.

SO ORDERED, this 15 day of March, 2021.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge